UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| United States of America, | No. 2:19-cr-00213-JAM |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS** |
| Reginald Smith, | |
| Defendant. | |

Defendant Reginald Smith moves this Court for an order suppressing the evidence found on his person and in the car in which he was arrested, as well as any statements he made on the day of his arrest. Motion to Suppress ("Mot."), ECF No. 19. The Government has opposed the Motion, Opp'n, ECF No. 23, and Defendant has replied, Reply, ECF No. 24. Supplemental briefing was also filed by the parties. See Suppl. Brief, ECF No. 28, Reply to Suppl. Brief, ECF No. 29. For the reasons set forth below, the Court DENIES Defendant's motion.

///

///

///

1

I.   BACKGROUND

On August 7, 2019, Vallejo Police Detectives Bretton Wagoner and Jarrett Tonn, members of the Vallejo Police Department's Crime Reduction Team, were notified by Sergeant Jerome Bautista that a red Chevrolet Camaro convertible was driving in their area with a "front cracked windshield and side tinted windows." Vallejo Police Department Crime Report ("Crime Report") at 1, ECF No. 19-1.  Once behind the car, Detective Wagoner noticed that the center brake lights were not working properly, in violation of Vehicle Code § 24252(a).  Id.  The detectives pulled the car over and Detective Wagoner exited the patrol car and approached the passenger side of the car.  Id.

The passenger window was rolled down when Detective Wagoner arrived at the car.  Id.  Through the window, Detective Wagoner observed a clear, twist-tied plastic bag which contained a crystal-like substance that he recognized to be methamphetamine. Id.  In his report, Detective Wagoner stated that the plastic bag of methamphetamine was in plain view, on the back seat of the car.  Crime Report at 1.

Detective Wagoner asked Defendant, the driver and sole occupant of the car, to remove the keys from the ignition and hand them over.  Id.  Defendant removed the keys and placed them on the center console.  Id.  Detective Wagoner reached in and grabbed them.  Id.  Detective Wagoner then told Defendant to put his hands on the steering wheel.  Id.  Defendant Wagoner subsequently walked over to the driver's side of the car to handcuff Defendant.  Crime Report at 1.  A struggle ensued wherein the detectives forcefully handcuffed Defendant. During

2

the struggle, one of the detectives stated: "There's dope right here on the back seat." Wagoner Body Camera Footage at 2:27.

Once the detectives removed Defendant from the car, Detective Tonn retrieved the bag of methamphetamine that Detective Wagoner reported seeing on the back seat when he first approached. Crime Report at 1. In doing so, Detective Tonn found a second twist-tied plastic bag on the back seat. Id. The detectives suspected it also contained methamphetamine. Id. The bags weighed 91.7 and 98.5 grams respectively. Id. On the back seat, Detective Tonn also found a black plastic bag that contained smaller bags of suspected MDMA (15.6 grams), black tar heroin (11 grams), and powder cocaine (6 grams). Id.

Detective Tonn then found a semi-automatic .25 caliber pistol in the rear pouch of the front passenger seat of the car. Crime Report at 1. The pistol was loaded with a magazine containing six .25 caliber cartridges of ammunition. Id. Detective Tonn also found two digital scales in the passenger seat pouch. Id. at 2.

Eventually, the car and all its contents were booked into evidence. Id. Defendant was placed under arrest for sale, possession of a controlled substance while armed, and being a felon in possession of a firearm and ammunition. Id.

## II.  OPINION

Defendant moves to suppress evidence obtained as a result of the seizure and subsequent search of Defendant and his car on the grounds that the detectives did not have reasonable suspicion or probable cause to seize Defendant. Mot. at 6-7. Defendant also

moves to suppress any statements made during the arrest on the grounds that the detectives failed to give him his Miranda warnings and the statements were coerced. Id. at 7-8.

The Government argues that probable cause to seize Defendant and search his person and his car developed when the detectives saw contraband through his open passenger-side window. Opp'n at 5-6. Once probable cause developed, the Government contends the warrantless search of Defendant's car was valid: (1) pursuant to the automobile exception; (2) as a search incident to arrest; and (3) based on the inevitable discovery doctrine. Id. at 5-8. Regarding the warrantless search of Defendant's person, the Government argues it was valid as a search incident to arrest. Id. at 8. The Government has agreed not to introduce any of Defendant's alleged incriminating statements. Id.

The Fourth Amendment to the Constitution prohibits "unreasonable searches and seizures" by the Government. United States v. Arvizu, 534 U.S. 266, 273 (2002). "A seizure conducted without a warrant is *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." United States v. Hawkins, 249 F.3d 867, 872 (9th Cir. 2001) (internal quotation marks and citation omitted). For instance, "it is well established that under certain circumstances the police may seize evidence in plain view without a warrant." Arizona v. Hicks, 480 U.S. 321, 326 (1987) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971)). However, absent a warrant, the initial intrusion that brings the police within plain view of the evidence must also be supported by one of the exceptions to the warrant requirement. Id.

In other words, "[w]hat the plain view cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused." Horton v. California, 496 U.S. 128, 135 (1990) (internal quotation marks and citation omitted). The incriminating nature of the evidence must be immediately apparent. Id. at 136 (emphasis added). "Immediately apparent" means the police have probable cause to believe an object in plain view is contraband. Minnesota v. Dickerson, 508 U.S. 366, 375 (1993).

    A.    Analysis

        1.    The Initial Intrusion

When the detectives were notified that Defendant was driving with a cracked windshield and side tinted windows and later observed that his center brake lights were not working, they initiated a traffic stop. The Fourth Amendment's protections extend to an investigatory stop of a vehicle "because stopping an automobile and detaining its occupants constitutes a seizure . . . even though the purpose of the stop is limited and the resulting detention quite brief." United States v. Choudhry, 461 F.3d 1097, 1100 (9th Cir. 2006) (citations omitted).

Investigatory traffic stops are akin to the on-the-street encounters addressed in Terry v. Ohio, 392 U.S. 1 (1968). Id. Accordingly, the same objective standard applies. Id. "[A] police officer may conduct an investigatory traffic stop if the officer has reasonable suspicion that a particular person has committed, is committing, or is about to commit a crime." Id.

(internal quotation marks and citation omitted). A traffic violation alone is sufficient to establish reasonable suspicion." Choudhry, 461 F.3d at 1100 (citations omitted). In other words, when an officer has probable cause to believe a traffic violation has occurred, a stop of the vehicle is reasonable. Id. (citing Whren v. United States, 517 U.S. 806, 810 (1996)).

Detectives Wagoner and Tonn had reasonable suspicion to stop Defendant for violating California traffic law. The detectives were notified by Sergeant Bautista that Defendant's car had a cracked windshield and illegally tinted windows. Crime Report at 1. When they approached Defendant's car, they saw that Defendant's brake lights were malfunctioning, in violation of Vehicle Code § 24252(a). Id. The detectives obtained the reasonable suspicion necessary to stop Defendant when they observed this violation. Whren, 517 U.S. at 810 ("[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").

Therefore, the initial stop was lawful and supported by an exception to the warrant requirement. See Choudhry, 461 F.3d at 1100. Defendant does not contest this.

　　　　2.　In Plain View

Once the detectives pulled Defendant over and approached his car, Detective Wagoner developed the independent probable cause necessary to seize Defendant and search his person and his car. As Detective Wagoner arrived at the passenger side of the car, he observed a bag of methamphetamine in plain view on the backseat. Detective Tonn and Sergeant Bautista's body camera footage confirm

6

this. When Detective Wagoner first approaches Defendant's car, it is clear from Detective Tonn's camera that Detective Wagoner turns and looks through the vehicle's window, with the help of his flashlight. See Tonn Body Camera Footage at 00:51. This is also observable from Sergeant Bautista's camera. See Bautista Body Camera Footage at 00:14. Following this, Detective Wagoner orders Defendant to hand over his car keys and place his hands on the steering wheel. See Tonn Body Camera Footage at 1:14.

Detective Wagoner quite literally had a window onto the backseat of the car prior to seizing Defendant. And through that window, Detective Wagoner observed, in plain view, a bag of methamphetamine. See Image of Backseat, Opp'n at 2. Its incriminating nature was immediately apparent. Id.; see also Crim Report at 1 ("I observed a large twist tied clear plastic bag which contained a crystal[-]like substance I recognized to be methamphetamine."). Thus, at the time Detective Wagoner ordered Defendant to hand over his keys, Detective Wagoner had probable cause to believe an object in plain view was contraband. See Dickerson, 508 U.S. at 375.

Because Detective Wagoner had developed probable cause, he was then lawfully able to search the car without a warrant pursuant to the automobile exception, and probable cause to search the defendant incident to arrest. United States v. Brooks, 610 F.3d 1186, 1193 (9th Cir. 2010) (Police may conduct a warrantless search of a vehicle if there is probable cause to believe the vehicle contains evidence of a crime); New York v. Belton, 453 U.S. 454, 461 (1981) (Police may conduct a warrantless search of an arrestee even if they have no reason to believe that the arrestee possesses

weapons of evidence on their person).

In sum, Detectives Wagoner and Tonn had the reasonable suspicion necessary to effectuate a traffic stop. As Detective Wagoner approached Defendant's car, he observed a bag of methamphetamine plainly on the backseat. Having seen contraband in the car, Detective Wagoner developed the independent probable cause required to seize Defendant and search his car under the automobile exception, and his person incident to arrest.

### III.   ORDER

For the reasons set forth above, the Court DENIES Plaintiff's Motion to Suppress.

IT IS SO ORDERED.

Dated: July 27, 2020

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE