UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>   v.<br><br>Reginald Smith,<br><br>            Defendant. | No.  2:19-cr-00213-JAM<br><br>**ORDER DENYING DEFENDANT'S SECOND MOTION TO SUPPRESS** |

    The matter before the Court is Defendant Reginald Smith's second Motion to Suppress.  Mot. to Suppress ("Mot."), ECF No. 44.  In adjudicating Defendant's previous Motion to Suppress, the Court did not reach the issue of whether immediately ordering Defendant to roll his car windows down, and then shinning a flashlight through them, was itself constitutionally valid.  See Order, ECF No. 36.  Defendant argues it was not: the contraband was not in plain view; those actions constituted a search; and that search was not supported by probable cause.  Mot. at 4-6.  As a result, Defendant argues the evidence should be suppressed.  For the reasons set forth below, the Court DENIES Defendant's motion.

1

I. BACKGROUND

The Court described the events leading up to this motion in detail in its previously issued Order. See Order, ECF No. 36. Accordingly, only facts relevant to the instant motion are included here. On August 7, 2019, Vallejo Police Detectives Bretton Wagoner and Jarrett Tonn tailed Defendant after Sergeant Jerome Bautista notified them that he was driving with a "front cracked windshield and side tinted windows." Vallejo Police Department Crime Report ("Crime Report") at 1, ECF No. 19-1. Once behind Defendant's car, Detective Wagoner noticed that the center brake lights were not working properly, in violation of Vehicle Code § 24252(a). Id. The detectives pulled Defendant over, exited their patrol car, and approached Defendant's car from either side. Id.

As the detectives approached Defendant's car, Detective Tonn said: "Hey what's going on man, can you roll your windows down for me?" See Tonn Body Camera X81177579 at 00:40; see also Wagoner Body Camera X81179035 at 00:30. After these instructions, Detective Wagoner shined his flashlight toward the passenger side of the car. See Wagoner Body Camera X81179035 at 00:35. By that time, the passenger-side window was partially rolled down. Id. When Detective Wagoner reached Defendant's car, Defendant had rolled his window further down. See Wagoner Body Camera X81179035 at 00:41. Detective Wagoner used his flashlight to look through the open, passenger-side window. See Ton Body Camera X81177579 at 00:51; see also Bautista Body Camera X81165410 at 00:14. Detective Wagoner observed a bag of methamphetamine on the backseat. Crime Report at 1.

II.   OPINION

Defendant moves to suppress evidence obtained during the search of his car on the grounds that the evidence discovered was the fruit of an illegal search. Mot. at 5-6. The Government argues that Detective Tonn's order to roll down the windows did not abrogate the plain view doctrine because Defendant was in a car, where there is a lower expectation of privacy. Opp'n at 2-3, ECF No. 49. The Government also argues that the law allows for Detective Wagoner's use of a flashlight to look into Defendant's car. Id. at 3-4. The Government is correct.

"[I]t is well established that under certain circumstances the police may seize evidence in plain view without a warrant." Arizona v. Hicks, 480 U.S. 321, 326 (1987) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971)). However, whether property is in plain view of the police, such that it can be lawfully seized without a warrant, depends on the legality of the intrusion that enables the police to see it. Texas v. Brown, 460 U.S. 730, 737 (1983). The intrusiveness of a search is measured not by its scope, but by the expectation of privacy upon which the search intrudes." United States v. Winsor, 846 F.2d 1569, 1574 (9th Cir. 1988). The expectation of privacy associated with a car "is significantly less than that relating to one's home or office." United States v. Chadwick, 433 U.S. 1, 12 (1977).

Defendant cites to Hicks and Winsor in arguing that a Fourth Amendment search occurs when the police command a person to expose an area in which he has a reasonable expectation of privacy and that area is revealed as a result of the command. See Mot. at 3-4. In Hicks, the police were lawfully present in

3

the defendant's apartment when an officer saw a turntable he suspected was stolen. 480 U.S. at 323. The officer moved the turntable to check the serial number which established it was stolen. Id. The Supreme Court held that the movement of the turntable constituted a search that fell outside the purview of the plain view doctrine and was unsupported by probable cause. Id. at 326-28. As a result, the search was unlawful. Id. In Winsor, the police looked into the defendant's residential hotel room through the room's open door when pursuing the defendant's brother. 846 F.2d at 1571. The Ninth Circuit held that the police did effect a search when they gained visual entry into the room through the door that was opened at their command. Id. at 1573. And that, considering the expectation of privacy associated with a residence, the search had to justified by probable cause. Id. at 1579.

However, the search of a residence is not at issue here. Detective Tonn ordered Defendant roll down the windows of his car while Detective Wagoner shined his flashlight into the backseat. Unlike with a residence, "there is no legitimate expectation of privacy . . . shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." Brown, 460 U.S. at 740. For instance, in Brown, the defendant was stopped at a checkpoint. Id. at 733. The officer, standing alongside the driver-side window of the defendant's car, shined his flashlight into the car and saw the defendant withdrawing his hand from his pocket with a party balloon between his fingers. Id. The officer was aware that narcotics were frequently

4

packaged in balloons like that one, so he shifted his position to obtain a view into the glove compartment where he noticed several small plastic vials, loose white powder, and an open bag of party balloons. Id.

The Supreme Court held that the officer lawfully seized the evidence from the defendant's car. Brown, 460 U.S. at 739. It was "beyond dispute" that the officer's action in shining his flashlight to illuminate the interior of defendant's car "trenched upon no right secured to the latter by the Fourth Amendment." Id. at 740. "[T]he use of artificial means to illuminate a darkened area simply does not constitute a search . . . ." Id. And the fact that the officer changed his position and bent down at an angle so he could see what was inside the defendant's car was "irrelevant to Fourth Amendment analysis." Id. (internal quotation marks and citation omitted). The latter hinged on the fact that the general public can peer into the interior of a car from any number of angles, so there is no reason an officer should be precluded from observing what would be visible to him as a private citizen. Id. Thus, the plain view doctrine was appropriately invoked. Id. at 741.

Officers routinely ask divers to roll their windows down during traffic stops. This request is necessary to facilitate communication between the officers and the driver and it minimizes the threat to officer safety inherent in all traffic stops. See Pennsylvania v. Mimms, 434 U.S. 106, 110 (1977). Officers also routinely use flashlights and change their positions to get a better look inside of a car, and Brown leaves no doubt that these actions do not constitute a search. 460 U.S.

at 740.  As a result, when Detective Tonn ordered Defendant to lower his windows, and Detective Wagoner subsequently used his flashlight and turned his body to better see into the car, they did not conduct a search that was unsupported by probable cause. That initial intrusion was lawful, and it was in the context of that initial intrusion that Officer Wagoner observed, in plain view, a bag of methamphetamine on the backseat.  Accordingly, these actions did not abrogate the plain view doctrine and the subsequent search was supported by probable cause.

## III.   ORDER

For the reasons set forth above, the Court DENIES Defendant's [44] Motion to Suppress.

IT IS SO ORDERED.

Dated: September 17, 2020

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE