UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>       v.<br><br> Reginald Smith,<br><br>                    Defendant. | No.  2:19-cr-00213-JAM<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

     Defendant Reginald Smith moves to dismiss the indictment for violation of the Speedy Trial Act ("STA") by post-indictment delay.  Mot. to Dismiss ("Mot."), ECF No. 43.  The Government has responded in opposition, Opp'n, ECF No. 50, to which Smith has replied, Reply, ECF No. 52.  After consideration of the parties' briefing on the motion and relevant legal authority, the Court DENIES Smith's Motion to Dismiss.

                    I.    BACKGROUND

     On December 5, 2019, a grand jury indicted Smith, charging him with one count of Possession with Intent to Distribute Methamphetamine, 21 U.S.C. § 841(a)(1), (b)(1)(B), and one count of Possession of a Firearm in Furtherance of a Drug Trafficking

1    Crime, 21 U.S.C. § 853(a).  <u>See</u> ECF No. 1.  Two weeks later,

2    Smith made an initial appearance before the magistrate judge.  He

3    entered a not guilty plea, demanded a jury trial, and was taken

4    into custody.  Dec. 19, 2019 Mins., ECF No. 4.  Pretrial services

5    then issued a bail report.  The report highlighted Smith's

6    history of substance abuse and violent crime.  It ultimately

7    concluded that, at the time, there was no condition, or

8    combination of conditions, that could be fashioned to reasonably

9    assure Smith's appearance at future court proceedings or the

10   safety of the community.  On December 23, the magistrate judge

11   held a detention hearing.  Based on Pretrial Services'

12   recommendation, she issued an order of detention pending trial.

13   ECF No. 7.  Smith remains in custody.

14        During the period Smith has been in custody, time has been

15   excluded under the STA for several different reasons.  Smith

16   agreed to exclusions of time for defense preparation, pursuant to

17   18 U.S.C. § 3161(h)(7) (also known as "Local Code T4"), from

18   December 19, 2019 to April 14, 2020.  <u>See</u> ECF Nos. 4, 10, 11.  In

19   March, the Eastern District of California began issuing general

20   orders, restricting the Court's operations, to help minimize the

21   spread of COVID-19.  <u>See</u> Information Re: COVID-19 and Court

22   Operations, Restrictions, and Closures,

23   http://www.caed.uscourts.gov/caednew/index.cfm/news/covid-19-

24   courthouse-closure-and-court-hearing-information/.  Keeping in

25   compliance with these orders, on March 23, 2020, the Court

26   continued Smith's April 14, 2020, status conference to June 16,

27   2020.  <u>See</u> ECF No. 12.

28        On May 1, 2020, the Government moved to exclude time from

April 14, 2020, to June 16, 2020, under the STA's "ends of justice" exclusion.  See ECF No. 13; see also 18 U.S.C. § 3161(h)(7)(A).  The Court granted in part and denied in part the Government's motion.  See Order, ECF No. 18.  The Court could not retroactively exclude time under the ends-of-justice exclusion, so time was not excluded from April 15, 2020, to April 30, 2020.[1]  However, the Court excluded time between May 1, 2020, and May 19, 2020—the day the Order was issued—pursuant to 18 U.S.C. § 3161(h)(1)(D).  And the Court prospectively excluded time under the ends-of-justice exclusion from the date of its Order until Smith's June 16, 2020, status conference.

On May 26, 2020, Smith filed a motion to suppress.  See ECF No. 19.  This tolled Smith's speedy trial clock from May 26, 2020, until July 27, 2020, the date the Court decided the motion, pursuant to 18 U.S.C. § 3161(h)(1)(D).  Then on July 27, 2020, the Government filed another motion to exclude time under the ends-of-justice exclusion.  See ECF No. 37.  And on August 25, 2020, Smith filed the instant motion to dismiss and another motion to suppress.  See ECF Nos. 43, 44.  The Court decided Smith's second motion to suppress on September 18, 2020, see ECF No. 54; and granted the Government's motion to exclude time between August 20, 2020, to September 22, 2020, pursuant to § 3161(h)(1)(D), as motions were pending, see ECF No. 55.  The time between September 22, 2020, and the date of this Order is also excludable under § 3161(h)(1)(D).

---

[1] The Court's Order at ECF No. 18 incorrectly characterized the denied time period as beginning on April 19, 2020, when it instead began on April 15, 2020.

1              II.   OPINION

2        A.   Speedy Trial Act

3             1.   Legal Standard

4        Congress enacted the STA, in part, to codify the strong

5   public interest in speedy justice.  United States v. Pollock,

6   726 F.2d 1456, 1459-60 (9th Cir. 1984).  But it was also born

7   out of Congress's "concern[] about a number of

8   problems . . . that vex an individual who is forced to await

9   trial for long periods of time."  Id. (citing H.R. Rep. No.

10  1508, 93rd Cong. 2d Sess., reprinted in [1974] U.S. Code Cong. &

11  Ad.News 7401, 7408).  These problems include: "disruption of

12  family life, loss of employment, anxiety, suspicion, and public

13  obloquy."  Id.  To address these correspondent concerns, the STA

14  sets strict time limits on the two phases of prosecution: the

15  time period between arrest/service of summons and an indictment

16  ("Phase 1"), and the time period between arraignment and trial

17  ("Phase 2").  Absent an exclusion of time, Phase 1 cannot exceed

18  30 days and Phase 2 cannot exceed 70 days.  18 U.S.C. § 3161(b),

19  (c).  If a defendant is not brought to trial within these time

20  limits, "the information or indictment shall be dismissed on

21  motion for the defendant."  18 U.S.C. § 3162(a)(2).

22       Section 3161(h) sets forth permissible grounds for

23  excluding time under the STA.  One of these grounds is now

24  commonly referred to as an ends-of-justice exclusion.  Provided

25  by subsection (h)(7), this exclusion permits defendant, defense

26  counsel, and the government's counsel to seek an ends-of-justice

27  continuance.  18 U.S.C. § 3161(h)(7)(A).  A court may also grant

28  an ends-of-justice continuance on its own motion.  Id.

Regardless of who seeks the continuance, a court must satisfy itself of each of § 3161(h)(7)'s requirements before granting the motion.

Regarding its duration, an ends-of-justice exclusion must be "specifically limited in time." United States v. Ramirez-Cortez, 213 F.3d 1149, 1154 (9th Cir. 2000).  Although § 3161(h)(7) permits district courts to exclude "any period of delay," the Ninth Circuit has underscored that this temporal flexibility does not permit an ends-of-justice continuance to be indefinite.  United States v. Jordan, 915 F.2d 563, 565 (9th Cir. 1990); Pollock, 726 F.2d at 1461.  Moreover, an ends-of-justice continuance must be "justified [on the record] with reference to the facts as of the time the delay is ordered." Ramirez-Cortez, 213 F.3d at 1154 (emphasis in original) (internal quotation marks omitted).  After independently considering factors listed in § 3161(h)(7)(B), "among others," a court must determine whether "the ends of justice served [by granting a continuance" outweigh "the best interest of the public and the defendant in the speedy trial."  18 U.S.C. § 3161(h)(7)(A).

The STA "imposes strict specificity requirements" on these findings.  United States v. Lloyd, 125 F.3d 1263, 1268 (9th Cir. 1997).  "[T]he 'ends of justice' exclusion . . . may not be invoked in such a way as to circumvent the time limitations set forth in the [STA]." United States v. Clymer, 25 F.3d 824, 829 (9th Cir. 1994).  The ends-of-justice provision "is not a general exclusion for every delay, and any continuance granted under it must be based on specific underlying factual

circumstances." <u>United States v. Martin</u>, 742 F.2d 512, 514 (9th Cir. 1984).  Courts are not entitled "to rely on the unverified claims" of the party seeking a continuance.  <u>Id.</u> at 1270.  Nor may they conclude that one of the § 3161(h)(7)(B) factors justifies a continuance without tethering that conclusion to case-specific considerations.  <u>United States v. Perez-Reveles</u>, 715 F.2d 1348, 1352 (9th Cir. 1983) ("although the complexity of the case is a permissible factor . . . the mere conclusion that the case is complex is insufficient.").

A court must set forth these findings on the record, either orally or in writing.  18 U.S.C. § 3161(h)(7)(A); <u>see also</u> <u>Zedner v. United States</u>, 547 U.S. 489, 509 (2006); <u>Ramirez-Cortez</u>, 213 F.3d at 1153.  A court need not issue its specific findings "at the precise moment it grants a[n ends-of-justice] continuance." <u>United States v. Bryant</u>, 726 F.2d 510, 511 (9th Cir. 1984).  That said, § 3161(h)(7)'s analysis is a forward-looking inquiry.  "A court may not, 'subsequent to the grant of a continuance, undertake for the first time to consider the factors and provide the findings required by [§ 3161(h)(7)(A)].'" <u>Jordan</u>, 915 F.2d at 566 (quoting <u>United States v. Frey</u>, 735 F.2d 350, 352 (9th Cir. 1984)); <u>see also</u> <u>Frey</u>, 735 F.2d at 352 (holding that a district court may not make nunc pro tunc ends-of-justice findings to accommodate an "unwitting violation of the [STA].").

       2.   <u>STA Violation</u>

As a preliminary matter, a statutory violation of the STA has not yet occurred in this case.  The STA mandates dismissal of the indictment upon defendant's motion if the seventy-day

1   limitations period is exceeded.  18 U.S.C. § 3162(a)(2).  Not

2   counted toward the limitations period is any time rightfully

3   excluded under § 3161(h).  Id.  In making this determination,

4   the Court must first ascertain when the seventy-day clock began

5   running.  United States v. Wirsing, 867 F.2d 1227, 1229 (9th

6   Cir. 1989).  Smith's indictment was returned on December 5,

7   2019.  As described above, it is clear that given the amount of

8   time properly excluded since Smith was indicted and made his

9   initial appearance, seventy days of non-excludable time have not

10  passed as of the date of this Order.

11      Accordingly, Smith's statutory rights under the STA have

12  not yet been violated.  See Wirsing, 867 F.2d at 1231 (the Ninth

13  Circuit held that, accounting for excludable days, the district

14  court properly denied defendants' motions to dismiss as the

15  limitations period had not been exceeded).

16              3.   Ends-of-Justice

17      Although there is time remaining on Smith's speedy trial

18  clock, it is readily apparent that at this stage of the pandemic

19  additional delay is inevitable and Smith cannot receive a jury

20  trial within the time prescribed by the STA.  The Court

21  therefore must decide whether another ends-of-justice

22  continuance in this case should be applied.  Before applying an

23  ends-of-justice continuance, a judge must find "the ends of

24  justice served by taking such action outweigh the best interest

25  of the public and the defendant in a speedy trial."  18 U.S.C.

26  § 3161(h)(7)(A).  Because § 3161(h)(7)(A) requires this

27  balancing to be case-specific, the Court cannot, and does not,

28  find that considerations surrounding COVID-19's impact on public

1    safety and the Court's operations will, in every case, outweigh

2    the best interest of the defendant and the public in a speedy

3    trial.  And although ends-of-justice interests and speedy-trial

4    interests are concededly abstract, courts must nevertheless

5    attempt to define them in each case and assess which set of

6    interests is weightier under the circumstances.  The factors set

7    forth in § 3161(h)(7)(B), "among others," aid in this analysis.

8                    a.    Impossibility - § 3161(h)(7)(B)(i)

9         The Court must first consider whether its failure to apply

10   an ends-of-justice continuance "would be likely to make a

11   continuation of [the] proceedings impossible, or result in a

12   miscarriage of justice."  18 U.S.C. § 3161(h)(7)(B)(i).  This

13   factor weighs in favor of granting a continuance.  The state of

14   California, and this district, are still heavily impacted by

15   COVID-19.  On October 7, 2020, 3,575 new COVID-19 infections

16   were confirmed in California.  See https://www.cdph.ca.gov/

17   Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx.  The state

18   now has had a total of 834,800 positive cases.  Id.  As a

19   result, state and local restrictions are still in effect.

20   Although this district's general orders grant each judge

21   discretion on when to resume in-person proceedings, it is not

22   possible to predict with absolute certainty when an in-person

23   jury trial can safely occur in this Court.  However, the

24   undersigned does not agree with Smith that this delay is

25   indefinite.  This Court is confident that jury trials will

26   resume in 2021.

27        If the Court does not apply another ends-of-justice

28   continuance, Smith's speedy trial clock will soon expire.  At

                                    8

1   that point, the Court will have no choice but to dismiss the

2   charges brought against him.  See 18 U.S.C. § 3162(a)(2).  While

3   the Government may sometimes re-indict a defendant on

4   previously-dismissed charges, re-indictment could prove to be a

5   difficult—if not impossible—task.  See Zender, 547 U.S. at 499

6   (citing 18 U.S.C. § 3288) (a new indictment may be returned only

7   if the charges are dismissed without prejudice and the defendant

8   is re-indicted within six calendar months of the date of the

9   dismissal).  Consequently, the Court finds its failure to grant

10  an ends-of-justice continuance in this case "would be likely to

11  make a continuation of [this] case impossible."  18 U.S.C.

12  § 3161(h)(B)(i).

13                  b.   Complexity - § 3161(h)(7)(B)(ii)

14       Courts must also assess whether a case "is so unusual or so

15  complex . . . that it is unreasonable to expect adequate

16  preparation for pretrial proceedings or for the trial itself"

17  within the STA's prescribed limits.  18 U.S.C.

18  § 3161(h)(7)(B)(ii).  The "number of defendants, the nature of

19  the prosecution, or the existence of novel questions of fact or

20  law" may give rise to a Court's complexity finding.  Id.

21  Neither party contends this case is complex nor does the Court

22  find it to be so.  Indeed, it involves two relatively

23  straightforward charges against a single defendant.  The nature

24  of the proceedings weighs in favor of Smith and the public's

25  interest in a speedy trial.

26                  c.   Pre-Indictment Delay - § 3161(h)(7)(B)(iii)

27       In cases where an arrest precedes indictment, courts must

28  consider whether a delay in filing the indictment was caused by

one of two circumstances: (1) the arrest occurred "at such a time that it is unreasonable to expect return and filing of the indictment" within the STA's time limits, or (2) "the facts upon which the grand jury must base its determination are unusual or complex."  This factor has no bearing on this case's analysis or the Court's ends of justice determination here.

d.    Competency/Continuity of Counsel –
§ 3161(h)(7)(B)(iv)

Section 3161(h)(B)(iv) requires courts to consider counsels' ability to prepare and present their case, even when the case is not so complex that it bears independent consideration under the "complexity" factor.  Under this factor, courts must ask whether not applying an ends-of-justice continuance would (1) deny the defendant reasonable time to obtain counsel, (2) "unreasonably deny" either party continuity of counsel, or (3) deny either parties' counsel "reasonable time necessary for effective preparation, taking into account the exercise of due diligence."  18 U.S.C. § 3161(h)(7)(B)(iv).

COVID-19 has no doubt impacted counsels' ability to prepare and present their case.  But the difficulties posed by the pandemic are not specific to this case.  Instead, when invoking this provision, "[t]he government should [offer] something about the specific people and documents involved in the underlying case, why they were unavailable, or what information they were looking for they lacked access to because of teleworking or other conditions created by COVID-19."  Elms v. United States, No. 3:20-cv-00253-MMD-CLB, 2020 WL 2085970 at *2 (D. Nev. April 30, 2020).  The Government does not anticipate the spread of

1  COVID-19 will impede trial preparation.  <u>See</u> Opp'n at 9-10.

2  This factor, therefore, weighs in favor of Smith's and the

3  public's speedy trial rights.

4                 e.   "Other" Factors - § 3161(h)(7)(B)

5       Section 3161(h)(7)(B) instructs that judges must consider

6  the enumerated factors, "among others."  Other than the

7  prohibited considerations discussed below, the statute is silent

8  about what non-statutory factors judges should consider.  The

9  Court interprets this silence as conferring broad discretion to

10  consider factors it deems relevant based upon the specific facts

11  of the case and surrounding circumstances.  Indeed, in <u>Lloyd</u>,

12  the Ninth Circuit criticized the district court for failing to

13  take non-statutory considerations into account.  125 F.3d at

14  1269 (finding the district court should have considered whether

15  the parties "actually want[ed] and need[ed] a continuance, how

16  long a delay [was] actually required, [and] what adjustments

17  [could have been] made with respect to the trial calendars [to

18  avoid a continuance].").

19       The caselaw surrounding COVID-19 ends-of-justice

20  continuances remains surprisingly sparse.  The caselaw that does

21  exist provides little guidance as to what non-statutory factors

22  the Court should consider under these circumstances.

23  Nonetheless, the Court finds the following factors relevant:

24  • Whether the defendant is detained pending trial;

25  • Whether COVID-19 is present in the facility where the

26    defendant is detained (and if so, whether the defendant

27    belongs to a population that is particularly susceptible to

28    complications if infected with the virus);

11

- Whether the court can safely conduct a jury trial;
- Whether the defendant has invoked his speedy trial rights since the case's inception;
- How long the defendant has been detained;
- Whether the defendant is charged with a violent crime or has a history of violent crime;
- Whether the defendant was denied bail solely because of the risk of nonappearance; and
- Whether there is a specific reason to suspect recidivism if charges are dismissed.

Arguably a defendant's interest in a speedy trial is greater when he is detained awaiting trial, is detained in dangerous conditions, has invoked his speedy trial rights since the case's inception, and/or has been detained for a particularly long period of time.  Alternatively, the ends of justice served by excluding time under the STA are higher when the court lacks the ability to safely hold a jury trial, when a defendant is charged with a particularly violent crime, and when there are other indications that a defendant may pose a danger to society or recidivate if the STA clock runs and the charges are dismissed.

First, the Court acknowledges that Smith has been in either state or federal custody on these charges for over a year. However, all parties acknowledge that the Court is currently unable to safely hold a jury trial at this time.  As before, the counties that make up the Eastern District of California are reporting new COVID-19 cases, along with new COVID-19-related deaths.  There is still no reliable treatment, cure, or vaccine

for COVID-19.  Based on current circumstances and the
uncertainty that still looms large around COVID-19 and how to
effectively treat it, the Court finds it reasonable to conclude
that it will not be able to safely hold jury trials for the
remainder of 2020.  The Court's current and continued inability
to hold trials in a way that does not put the public, the
parties, court staff and counsel at serious risk weighs in favor
of applying another continuance.

Smith first invoked his speedy trial rights on May 8, 2020,
see ECF No 15, and has done so again with the filing of this
motion on August 25, 2020, see ECF No. 43.  He is currently
housed in the Sacramento County Jail ("SCJ"), where COVID-19
infections have been detected.  How many infections—the Court
cannot say.  SCJ's failure to report infection rates makes it
impossible for the Court to determine the severity of the
spread.

But Smith is in custody on charges of possession with
intent to distribute methamphetamine and possession of a firearm
in furtherance of this offense.  In 2003, Smith was convicted of
two counts of voluntary manslaughter and one count of assault
with possession of a firearm.  He received a twelve-year prison
sentence.  Smith was indicted for the present gun-related
offense four years after his release.

At Smith's detention hearing, the magistrate judge ordered
he remain detained pending trial given (1) his criminal history,
(2) the lengthy period of incarceration he faces if convicted,
and (3) unknown or unverified background information.  See Order
of Detention, ECF No. 9.  The Court cannot ignore the magistrate

13

judge's reasoned decision, and a motion to dismiss is not the appropriate way to reconsider it.  See Opp'n at 11.  Smith's track record of violent crime, and the magistrate judge's determinations, weigh in favor of applying an ends-of-justice continuance.  In addition, Smith is relatively young, and the Court has no reason to believe he has underlying medical conditions that place him at heightened risk of complications if infected with COVID-19.  In short, public safety considerations in this case outweigh the primary factors that weigh in Smith's favor—pretrial detention and detection of COVID-19 at the Sacramento County Jail—and lead this Court to conclude that a further ends of justice continuance does not violate Smith's STA rights.

> f.   Prohibited Considerations - § 3161(h)(7)(C)

The STA bars judges from applying ends-of-justices continuances based on (1) "general congestion of the court's calendar," (2) the Government's "lack of diligent preparation," or (3) the Government's "failure to obtain available witnesses." 18 U.S.C. § 3161(h)(7)(C).  The Ninth Circuit has also held that the negotiation of a plea bargain is not a factor that may support applying an ends-of-justice continuance.  Ramirez-Cortez, 213 F.3d at 1156 (citing Perez-Reveles, 715 F.2d at 1352).  The Court has not taken any of these prohibited considerations into account.

> g.   Conclusion

After carefully weighing the specific case factors discussed above, the Court finds that the ends of justice served by applying an exclusion of time continue to outweigh Smith and

14

the public's interests in a speedy trial.  The Court is
confident that it will resume jury trials sometime in 2021 and
therefore any time excluded will not be indefinite.  Applying
its most conservative and best estimate (which is all the Court
can do under these extraordinary and unusual circumstances), the
Court sets this case for jury trial on June 7, 2021 at 9:00 a.m.
The Court further sets a trial confirmation hearing for April
20, 2021 at 9:30 a.m.  This trial date is set with the
understanding that, if jury trials resume prior to June 7, 2021,
the Court will advance this trial to an earlier date mutually
convenient to the parties.

     Accordingly, the Court, on its own motion, hereby orders
that the time from the date of this Order, through June 7, 2021,
shall be excluded from computation under the Speedy Trial Act,
18 U.S.C. § 3161(h)(7)(A).

     B.    Sixth Amendment

           1.    Legal Standard

     "In all criminal prosecutions, the accused shall enjoy the
right to a speedy and public trial . . . ." U.S. Const. amend.
VI.  This right attaches upon arrest or indictment, whichever
occurs first.  See United States v. MacDonald, 456 U.S. 1, 6-7.
For Sixth Amendment purposes, Smith is entitled to a computation
of time from December 5, 2019, the date of his indictment.  To
determine whether a defendant has been deprived of the Sixth
Amendment right to a speedy trial, courts weigh the four Barker
factors which include: "(1) the length of the delay; (2) the
reason for the delay; (3) the defendant's assertion of the
right; and (4) the prejudice resulting from the delay." United

15

1  States v. Nance, 666 F.2d 353, 360 (9th Cir. 1982) (citing
2  Barker v. Wingo, 407 U.S. 514, 531–33 (1972)).

3       "Courts balance all four of these factors in a practical,
4  case-by-case analysis under Barker."  United States v. Myers,
5  930 F.3d 1113, 1120 (9th Cir. 2019).  None of the four factors
6  is "either a necessary or sufficient condition" in determining
7  whether a defendant's speedy trial rights have been violated.
8  Id. (citing Barker, 407 U.S. at 533).  Instead, the factors are
9  all related and must be considered together along with any other
10 relevant circumstances.  Id.

11      The Court has found that the STA has not been violated.
12 But this does not necessarily preclude a court from finding a
13 violation of the defendant's Sixth Amendment right to a speedy
14 trial.  The STA itself provides that none of its provisions
15 "shall be interpreted as a bar to any claim of denial of a
16 speedy trial as required by amendment VI of the Constitution."
17 18 U.S.C. § 3173.  However, it would be "an unusual case in
18 which the time limits of the [STA] have been met but the [S]ixth
19 [A]mendment right to speedy trial has been violated."  Nance,
20 666 F.2d at 360.

21           2.  Analysis

22                a.  Length of Delay

23      The Barker inquiry begins by considering whether the time
24 between accusation—whether by arrest or indictment—and trial "has
25 crossed the threshold dividing ordinary from 'presumptively
26 prejudicial' delay."  Doggett v. United States, 505 U.S. 647, 652
27 (1992) (quoting Barker, 407 U.S. at 530–31)).  Only if the
28 accused makes this showing, does the Court go on to consider the

other Barker factors.  Id. at 651–52.  There is no bright-line
time limit dividing the lengths that trigger further Barker
inquiry from those that do not, however, a delay of around one
year is considered presumptively prejudicial, and the presumption
that delay prejudices the defendant intensifies over time.  Id.
at 652; United States v. Gregory, 322 F.3d 1157, 1161–62 (9th
Cir. 2003).

Smith has been in federal pretrial custody for nine months
now.  Given the June 2021 trial date set by the Court, his trial
will be delayed by more than a year.  This delay is presumptively
prejudicial and clearly suffices to trigger the remainder of the
Barker inquiry.  See id. at 1161–62.

b.  Reasons for the Delay

The length of the delay alone is not determinative.  "Among
other things, a court may consider whether the [G]overnment or
the criminal defendant is more to blame for the delay."  Myers,
930 F.3d at 1119.  If the delay is more attributable to the
defendant, he is deemed to have waived the right to a speedy
trial.  Id.  By contrast, if the Government has acted in bad
faith in causing the delay, it must be "weighted heavily against
the [G]overnment."  Id. (internal quotation marks and citation
omitted).  Most relevant here, "a good-faith, reasonable
justification for the delay, such as a missing witness [], or a
meritorious interlocutory appeal [], will weigh less heavily
against the [G]overnment or not weigh against the [G]overnment
at all."  Id. at 1119–20 (citations omitted).

Smith does not contend the Government has attempted "to
delay the trial in order to [either] hamper the defense," "gain

some tactical advantage," or "harass [him]."  Barker, 407 U.S. at 531 n.32.  That said, the Court does not consider Smith's decision to file motions to suppress to be a reason to blame him for the delay.  The Court finds the delay to be neither attributable to the Government nor Smith.  Instead, the Court's decision to take responsible, emergency health measures to limit the spread of COVID-19 is responsible for the delay.  The Court's inability to safely conduct a jury trial is a good-faith and reasonable justification for the delay.  One that does not weigh against the Government.

### c.   Responsibility to Assert the Right

The third Barker factor is whether the defendant asserted his right to a speedy trial.  If the defendant fails to assert the right, it will be difficult, but not impossible, for him to prove he was denied a speedy trial.  Myers, 930 F.3d at 1120 (internal quotation marks and citation omitted).  Smith invoked his speedy trial rights on May 8, 2020, and again on August 25, 2020.  See ECF Nos. 15, 43.  Smith's decision to assert his right not long after the time period his attorney required for defense preparation, when it became apparent that a jury trial would not be available to him for some time, strikes the Court as reasonable.  Accordingly, this factor does not weigh against Smith.

### d.   Prejudice

In evaluating the amount of prejudice resulting from the delay, courts should consider the interests the speedy trial right was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern

of the accused; and (3) limiting the possibility that the defense will be impaired.  <u>Myers</u>, 930 F.3d at 1120.  Of these interests, the last is "the most serious."  <u>Barker</u>, 407 U.S. at 532.  "[T]he inability of a defendant adequately to prepare his case skews the fairness of the entire system."  <u>Id.</u>

The Court acknowledges that all the speedy trial interests are important ones, however, the last and most weighty interest carries the day.  Smith does not argue that his ability to adequately prepare his case is impaired by pretrial delay.  Nor can he.  Neither side alleges this is a complicated or complex case.  Instead, it involves one defendant, a few police officers, and two relatively straight forward criminal charges.  Moreover, there will be no erosion of exculpatory evidence and testimony.  Each of the police officers involved in Smith's arrest were wearing body cameras.  Were memories to fade, the footage from the night in question will undoubtedly assist in refreshing recollections.

> ### e.   Conclusion

That Smith's trial will be delayed by more than a year is presumptively prejudicial.  However, the delay is justified and imposed in good faith.  COVID-19 infections are still on the rise in the district, around the state, and throughout the rest of the country.  The Court cannot hold a jury trial at the present time without putting the public, the parties, court staff and the attorneys at substantial risk.  Finally, any prejudice caused by the present length of the delay is mitigated by the fact that there is no real risk that the defense will be impaired by it.  Accordingly, the Court does not find that the

1   delay until June 7, 2021, constitutes a violation of Smith's

2   Sixth Amendment right to a speedy trial.

3           C.   Fifth Amendment

4           In addition to arguing that his statutory and Sixth

5   Amendment rights have been violated, Smith argues his pretrial

6   detention violates his Fifth Amendment rights.  See Mot. at 6-7.

7   This argument is without merit.  Smith cites to United States v.

8   Salerno, 481 U.S. 739 (1987) in support of this contention.  In

9   Salerno, the Supreme Court upheld the validity of the Bail

10  Reform Act, finding that it does not exceed the limitations

11  placed upon the Government by the Due Process Clause of the

12  Fifth Amendment.  In doing so, the Supreme Court mentioned that

13  pretrial detention might become excessively prolonged, and

14  therefore punitive.  Id. at 747 n.4.  However, it also

15  "intimate[d] no view as to the point at which detention in a

16  particular case might become excessively prolonged."  Id.

17          In conducting its STA and Sixth Amendment analyses, the

18  Court has thoroughly set forth the reasons for which it finds

19  Smith's detention has not been excessively prolonged.  The Court

20  has also deemed the determinations made by the magistrate judge

21  at Smith's detention hearing to have been reasonable.  Smith has

22  not sought reconsideration of his detention order under the Bail

23  Reform Act and its applicable provisions.  If he believes his

24  circumstances have changed such that the analysis and result

25  might be different, he can move for reconsideration of the

26  magistrate's pretrial detention order.

27                      III.   ORDER

28          For the reasons set forth above, the Court DENIES Smith's

1  Motion to Dismiss.  The matter having been decided on the papers,

2  the October 27, 2020, hearing is VACATED.

3      Trial is set for June 7, 2021, and a trial confirmation

4  hearing is set for April 20, 2021.

5      The time between the date of this Order and June 7, 2021 is

6  excludable under 18 U.S.C. section 3161(h)(7)(A).

7      IT IS SO ORDERED.

8  Dated: October 14, 2020

9
                                        _____
10                                       JOHN A. MENDEZ,
                                         UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28